IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

SHARON ENGRAV and
STEVEN ENGRAV,

                Plaintiffs,                OPINION and ORDER

v.                                               09-cv-196-slc

PROASSURANCE WI INSURANCE COMPANY,
GUNDERSEN CLINIC, LTD.,
GUNDERSEN CLINIC LTD. PROFESSIONAL LIABILITY
   INSURANCE PLAN,
GUNDERSEN LUTHERAN, INC.,
GUNDERSEN LUTHERAN MEDICAL CENTER, INC. and
SCOTT W. RATHGABER, M.D.,

                Defendants.

---

On April 9, 2009, plaintiffs filed this diversity jurisdiction medical malpractice lawsuit based on incidents that occurred on March 7, 2006. The two camps of defendants have moved for summary judgment on the ground that plaintiffs missed the three-year statute of limitation. *See* dkts. 23 and 33. Defendants' motions hinge on whether plaintiffs' claim actually arises under negligence rather than medical malpractice. This matters because the statute of limitations for medical malpractice can be tolled if the injured party files a request for mediation, which plaintiffs did here. As discussed below, I conclude that plaintiffs' claim is for medical malpractice. Therefore, I am denying defendants' motions for summary judgment.

From the parties' submissions, I find the following facts to be material and undisputed:

UNDISPUTED FACTS

Plaintiffs Sharon and Steven Engrav, husband and wife, are citizens of the state of Minnesota. Defendant Scott W. Rathgaber, M.D., is a citizen of the state of Wisconsin. Defendants Gundersen Clinic, Ltd., Gundersen Lutheran Medical Center, Inc., Gundersen

Lutheran Health System, Inc. and ProAssurance WI Insurance Company all are Wisconsin corporations with a principal place of business in this state. Defendant Gundersen Clinic, Ltd. Professional Liability Insurance Plan is the self-insurance plan for defendant Gundersen Clinic, Ltd. and is registered with the Wisconsin Office of the Commissioner of Insurance. The Gundersen Plan is not a separate legal entity from Gundersen Clinic, Ltd.

On March 7, 2006, Sharon Engrav was scheduled to undergo a colonoscopy at Gundersen Lutheran Medical Center with Dr. Rathgaber, a board certified gastroenterologist. Prior to the start of the colonoscopy, Engrav was brought into the procedure room on a wheeled patient cart with side rails. Once Engrav was in the procedure room, the side rails on the cart were lowered.

Lana Tunks, R.N., was the nurse assisting Dr. Rathgaber with Engrav's colonoscopy. Tunks was responsible for sedating Engrav before the procedure with an intravenous line using a sedation technique called "conscious sedation." "Conscious sedation" means that the patient is sedated but still capable of being roused to follow verbal direction if necessary. Once a patient is consciously sedated, the patient is put into a light sleep and cannot control her movement.

Prior to the start of the colonoscopy, Tunks instructed Engrav to roll onto her left side to face Tunks with Engrav's back facing Dr. Rathgaber. At the beginning of the procedure, Tunks was positioned near Engrav's head and Dr. Rathgaber was positioned behind Engrav's hips. Dr. Rathgaber inserted the colonoscopy probe into Engrav's colon to begin the procedure. After Dr. Rathgaber had inserted the probe one-and-a-half to two feet into Engrav's colon, his pager sounded. Tunks asked Dr. Rathgaber if he wanted her to turn on the call light and have someone come in to answer the page. Dr. Rathgaber replied that he did. He then removed his pager from his belt and handed it to Tunks.

Tunks stepped away from Engrav to turn on the call light, which was about five feet away from Tunks's previous position near Engrav's head. Tunks turned away from Engrav while turning on the call light. As Dr. Rathgaber continued with the procedure and watched the video display, he felt Engrav rolling away from him. Engrav slid off the cart and fell approximately three feet to the floor.

During Dr. Rathgaber's training, he never received any specific instructions on the topic of securing a patient on the procedure table during a colonoscopy procedure, but it was implied from his training that a patient should be secured during the colonoscopy procedure. During Tunks's on-the-job training, she was instructed to promote patient safety while a patient is sedated, which included ensuring that a sedated patient stays on the procedure cart.

In February 2009, plaintiffs mailed a "Request for Mediation Prior to Court Action" via certified mail to the Director of State Courts and the office of the Wisconsin Medical Mediation Panels acknowledged receipt of that request. On March 17, 2009, all parties agreed to waive mediation and on April 3, 2009, plaintiffs filed a summons and complaint before this court.

ANALYSIS

Defendants contend that this lawsuit is time-barred because plaintiffs' claim sounds in ordinary negligence, not medical malpractice. Defendants also argue in their reply brief that plaintiffs' complaint fails to provide sufficient factual allegations to support the elements of their claim for medical malpractice, but arguments raised for the first time in a reply brief are deemed waived. *Carter v. Tennant Co.*, 383 F.3d 673, 679 (7th Cir. 2004). Thus, I will not consider the merits of defendants' argument on this point.

3

Plaintiffs filed this case more than three years after Ms. Engrav rolled off of the cart. The statute of limitations for ordinary negligence is three years from the accrual of the cause of action. Wis. Stat. § 893.54(1). Therefore, if plaintiffs' claim sounds in ordinary negligence, then the claim is time-barred. For medical malpractice, the statute of limitations also is three years and starts running on the date of the injury. Wis. Stat. § 893.55(1m). However, under Section 655.44(4), the statute of limitations for medical malpractice claims is tolled from the date the director of state courts receives a request for mediation until 30 days after the last day of the mediation period. Wis. Stat. §§ 655.44(4); 655.465(7). Therefore, if plaintiffs' claim sounds in medical malpractice, then their claim is not time-barred because plaintiffs timely filed a request for mediation that tolled the statute long enough to bring this lawsuit within the three year limit.

Wis. Stats. ch. 655 legislates medical malpractice claims in Wisconsin, but it does not define what constitutes "malpractice." *See* Wis. Stat. ch. 655; *McEvoy v. Group Health Coop. of Eau Claire*, 213 Wis. 2d 507, 530 (1997). In *McEvoy*, the court concluded that Chapter 655 applies "only to negligent medical acts or decisions made in the course of rendering professional medical care." *Id.* As a result, courts distinguish negligent medical acts and decisions from negligence involving merely custodial or routine hospital care. Custodial or routine care "involves care and attention to the patient's safety rendered by a hospital which is nonmedical, administrative, ministerial or routine care." *Snyder v. Injured Patients and Families Comp. Fund*, 320 Wis. 2d 259, 267-68. Therefore, a routine hospital security search is not a "medical act" because it is not a health care service and does not involve the exercise of professional medical judgment. *Id.* at 272-73; *see also Kujawski v. Arbor View Health Care Ctr.*, 139 Wis. 2d 455, 462-

4

62, (1987) (use of wheel chair restraints for nursing home patients involves routine care); *Payne v. Milwaukee Sanitarium Found., Inc.*, 82 Wis. 2d 264, 272 (1977) (psychiatric patient's access to matches involves a mixed question of medical care and custodial care); *Cramer v. Theda Clark Mem'l Hosp.*, 45 Wis. 2d 147, 149-50, 172 N.W.2d 427 (1969) (leaving a disoriented patient unattended and unrestrained in a hospital bed involves custodial hospital care).

Defendants argue that *Snyder* establishes that cases that do not require expert testimony sound in ordinary negligence rather than medical malpractice. Defendants are incorrect. In *Snyder*, the court looked to case law addressing the need for expert testimony, noting that it provided "useful guidance" in determining whether the claim fell under Wis. Stats. ch. 655. *Id.* ¶ 10. However, the court in *Snyder* was careful to note that the case law on expert testimony was not determinative of whether a claim sounds in medical malpractice or ordinary negligence. *Id.* Common sense leads to the same conclusion: regardless whether we invoke the doctrine of *res ipsa loquitur,* some medical acts by medical specialists during medical procedures are so palpably wrong that a jury can discern the breach of duty and causal harm without the assistance of expert testimony. The obviousness of the mistake doesn't transform it from malpractice into ordinary negligence. Indeed, the implication of defendants' argument to the contrary is unsettling: the more obviously egregious the conduct of a medical professional, the less likely it is to constitute medical malpractice.

Defendants cite *Cramer,* 45 Wis. 2d 147 and *Kujawski v. Arbor View Health Care Ctr.*, 139 Wis.2d 455 (1987) for the proposition that a plaintiff's claim sounds in ordinary negligence rather than medical malpractice when it is based on allegations that the patient was left unattended and unsecured because these are matters of routine care. But neither *Cramer* nor

*Kujawski* stands for this proposition; the actual issue before each court was whether expert testimony was necessary to establish the standard of care. *Cramer*, 45 Wis. 2d at 149; *Kujawski*, 139 Wis. 2d at 458.

Defendants argue that the facts of this case make it analogous to *Snyder*. Again, defendants are incorrect. In *Snyder*, hospital security staff failed to search a patient when she returned to the inpatient psychiatric unit after using an unsupervised five-hour pass. The patient smuggled in a gun and used it to commit suicide. The court found that the security staff's failure to search the patient did not constitute a health care service, nor did it involve the exercise of professional medical judgment. 320 Wis.2d at 272-73. In the instant case, Ms. Engrav's injury occurred while her gastroenterologist was about a foot-and-a-half into the colonoscopy. Ms. Engrav fell off of the cart as a result of decisions, acts and omissions by medical professionals performing a specialized medical procedure on a patient incapable of protecting herself because she had been sedated as part of the procedure. This fits snugly within Wisconsin's definition of malpractice provided in *McEvoy*, 213 Wis. 2d at 530. The rudimentary nature of the challenged decisions (choosing not to raise the cart's side rails or to use passive restraints, then directing the nurse to leave her position near the patient), act (the nurse leaving her position as a spotter) and omission (failure adequately to secure the sedated patient during the colonoscopy) does not change this conclusion.

As a result, plaintiffs' claim is not time-barred by the statute of limitations and defendants' twinned motions for summary judgment must be denied. There is no need to consider plaintiffs' waiver and estoppel arguments.

ORDER

It is ORDERED that the motion for summary judgment filed by defendants Gundersen Clinic, Ltd., Gundersen Clinic Ltd. Professional Liability Insurance Plan and Scott W. Rathgaber, dkt. 23, and the companion motion for summary judgment filed by defendants ProAssurance WI insurance Company, Gunderson Lutheran, Inc. and Gunderson Lutheran Medical Center, Inc., dkt. 33, are both DENIED.

Entered this 12th day of March, 2010.

BY THE COURT:

/s/

STEPHEN L. CROCKER
Magistrate Judge